# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONSALL UNIFIED SCHOOL DISTRICT,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>RICHARD C., et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 17-CV-1386 W (MDD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [DOC. 9]** |

　　　Pending before the Court is a motion to dismiss the Counterclaim/Cross-claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the Bonsall Unified School District and Lori Cummins. [Doc. 9.] The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss.

//
//
//
//
//

1

# I. BACKGROUND

## A. Procedural History

On July 7, 2017, the Bonsall Unified School District commenced this action against Richard C., Melissa C., and their minor child Mary C. (*Compl.* [Doc. 1].) The school district seeks review of an adverse administrative decision rendered by the office of administrative hearings on April 11, 2017. (*Id.* [Doc. 1] ¶ 1.) That decision ordered the district to reimburse Mary C.'s parents for non-public school expenses for the 2016–2017 year, in addition to travel costs. (*ALJ Order* [Doc. 4, Exh. A] 84.)

On October 16, 2017, Defendants filed a counterclaim and cross-claim against the school district and Lori Cummins. (*Answer and Counterclaim/Cross-claim* [Doc. 4].) The Counterclaim/Cross-claim seeks review of the administrative decision, seeks to recover attorneys' fees from the underlying administrative matter, and it seeks redress for violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq. ("Section 504"), the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("the ADA"), and 42 U.S.C. § 1983. (*Id.* [Doc. 4] ¶¶ 59–96.)

On October 16, 2017, Defendants applied to the Court to use pseudonyms in place of their surname "with respect to all briefs, motions, oppositions to motions, replies, and other documents filed with the Court in this action." (*Ex Parte App. for Use of Pseudonyms* [Doc. 5] 2:1–7.) The application went unopposed. It requested that " 'Counter and Cross-claimant and Defendant be identified as 'Mary C.' and her parents be identified as 'Richard C.' and 'Melissa C.' " (*Id.*) On October 27, 2017, the Court granted this application, reasoning that the potential harm in the form of "disclosure of a child's private medical information" outweighed any public interest in Defendants' names. (*Oct. 27, 2017 Order* [Doc. 7].) Notwithstanding, some of the subsequent briefs filed by the school district and by Ms. Cummins contain Defendants' full surname. (*Notice of Mot. to Dismiss* [Doc. 9]; *Cummins Reply* [Doc. 17].) The district and Ms. Cummins are reminded to abbreviate Defendants' surname in accordance with the Court's order.

### B. Factual Background

Defendants' Counterclaim/Cross-claim alleges the following facts.

Mary C. is a ten-year-old girl. (*Counterclaim/Cross-claim* [Doc. 4] ¶ 15.) She "has been diagnosed with a Mood Disorder with Psychotic Features, Intermittent Explosive Disorder, Attention-Deficit Hyperactivity Disorder ("ADHD"), Autism Spectrum Disorder ("ASD"), Reading Disorder, and a Disorder of Written Language." (*Id.*) She has exhibited symptoms including defiance, impulsivity, shouting and screaming, anxiety, biting, hitting, scratching, and destroying property. (*Id.* [Doc. 4] ¶ 16.) She "reportedly sees ghosts in her room, on the playground, and at school." (*Id.* [Doc. 4] ¶ 17.)

Mary C. attended Bonsall Elementary School from Kindergarten through the beginning of 4th grade. (*Counterclaim/Cross-claim* [Doc. 4] ¶ 18.) She encountered a number of issues at school. In her kindergarten year, she threw a chair, head-butted a teacher, screamed, and threw tantrums. (*Counterclaim/Cross-claim* [Doc. 4] ¶ 19.) Her first-grade teacher rated her "at risk" in several criteria and assessed her "behavioral severity" to be within the 92nd percentile. (*Id.* [Doc. 4] ¶ 20.) Her teacher noted that she struggled to maintain a conversation, did not notice social cues, did not show interest in others' ideas, and got herself into trouble during unstructured times. (*Id.* [Doc. 4] ¶ 21.) Defendants allege that the district knew of Mary C.'s diagnoses of ADHD, autism, and possible mood disorder when planning her placement for the second grade. (*Id.* [Doc. 4] ¶ 22.) Nevertheless, they allege that the district "failed to offer her a placement designed to meet her unique needs." (*Id.* [Doc. 4] ¶¶ 22–24.)

A number of serious problems arose during Mary C.'s time in the second grade, at which time she was initially placed in 95% general education. (*Counterclaim/Cross-claim* [Doc. 4] ¶¶ 23–33.) Between September 28, 2014 and December 1, 2014, Mary had nine "significant behavioral incidents at school." (*Id.* [Doc. 4] ¶ 29.) These "were moderate to extreme in severity and included stomping feet, pushing paper off of desk[s], kicking at furniture, yelling," slapping and kicking at staff, and throwing things. (*Id.*) On

one occasion, Mary C. tried to stab someone with a screwdriver, then tried to stab someone else with a pencil, and finally and ended up stabbing herself and starting a fire. (*Id.* [Doc. 4] ¶ 28.) Afterwards, she had to be hospitalized for two weeks as a danger to herself and others. (*Id.*) Two months later, on December 2, 2014, she had another behavioral incident that was so severe that the school called 911 and evacuated her second-grade classroom. (*Id.* [Doc. 4] ¶ 30.)

Sometime between October of 2014 and January of 2015, Mary C. began attending a special day class. (*Counterclaim/Cross-claim* [Doc. 4] ¶ 33.) By January 5, 2015, she was attending general education for about half of her day. (*Id.*) On January 7, 2015, "the team amended her [individualized education program] to change her placement to 50% of the time in special education." (*Id.* [Doc. 4] ¶ 34.) However, Defendants allege that Mary C. was not attending special education 50% of the time by April of 2015. Instead, depending on "her mood and unilateral decisions by school staff," she attended the general education classroom for up to "100% of her day." (*See id.*) The amount of each day she spent in general education changed on a daily basis. (*Id.* [Doc. 4] ¶ 35.)

In February of 2015, Mary C. was admitted to a psychiatric hospital. Even so, and despite the difficulties she had in her second year, the district offered her a placement of 95% general education for third grade. (*Counterclaim/Cross-claim* [Doc. 4] ¶¶ 31, 36.) Mary's behavioral problems continued. (*Id.* [Doc. 4] ¶¶ 38–41.) The district frequently called Ms. C. to pick Mary up from school when these problems arose. (*Id.* [Doc. 4] ¶ 41.) These incidents were not marked in Mary's record as disciplinary actions. (*Id.*) By the end of the third grade, Mary had regressed academically and behaviorally. (*Id.* [Doc. 4] ¶ 42.)

Mary's parents removed her from Bonsall Elementary for her 4th grade year and placed her in Arch Academy ("Arch"), a certified non-public school. (*Counterclaim/Cross-claim* [Doc. 4] ¶ 43.) Arch provided counseling, mental health services, and had a clinical social worker on campus to deal with behavioral issues. (*Id.* [Doc. 4] ¶ 44.)

4

| | |
|---|---|
| 1 | Defendants initiated administrative proceedings against the district on July 6, 2016. |
| 2 | (*Compl.* [Doc. 1] ¶ 23.)  Defendants allege that the district retaliated against them by, |
| 3 | *inter alia*, "revok[ing] funding for Independent Educational Evaluations for Mary C.'s |
| 4 | little brother on September 21, 2016." (*Counterclaim/Cross-claim* [Doc. 4] ¶ 56.) |
| 5 | According to the Counterclaim/Cross-claim, funding for these evaluations had previously |
| 6 | been approved on May 23, 2016.  (*Id.*) |
| 7 | An administrative hearing was held on this matter on January 24, 2017. |
| 8 | (*Counterclaim/Cross-claim* [Doc. 4] ¶ 50.)  The ALJ ordered that the district reimburse |
| 9 | Defendants for their tuition at Arch, and for associated transportation expenses.  (*Id.* |
| 10 | [Doc. 4] ¶ 45; *ALJ Order* [Doc. 4, Exh. A] 84.) |
| 11 | The Counterclaim/Cross-claim asserts five claims for relief: (1) an appeal of the |
| 12 | administrative decision; (2) for an award of attorneys' fees; (3) for violation of Section |
| 13 | 504; (4) for violation of the ADA; and (5) for violation of 42 U.S.C. § 1983. |
| 14 | (*Counterclaim/Cross-claim* [Doc. 4].)  The document does not distinguish between |
| 15 | parties, referring to Defendants collectively as "Family" and not specifying against whom |
| 16 | each cause of action is brought.  (*Id.* [Doc. 4] ¶¶ 59–96.) |
| 17 | The school district and Ms. Cummins now move to dismiss the final three causes |
| 18 | of action within the Counterclaim/Cross-claim. |

## II. Legal Standard

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (as amended).

## III. DISCUSSION

### A. Defendants' Section 504 and ADA Claims are only Asserted Against the District.

The motion's first two contentions are devoted to the dismissal of the Section 504 and ADA claims against Ms. Cummins. (*Mot. to Dismiss* [Doc. 9-1] 7:1–8:6.) In opposition, Defendants clarify that "Student only brought claims against Ms. Cummins

6

17-CV-1386 W (MDD)

under Section 1983." (*Defs.' Opp'n* [Doc. 14] 18:25.) These contentions are therefore moot.

### B. The District's Contention that Mary C.'s Parents Lack Standing to Assert Section 504 or ADA Claims Contravenes Clear Ninth Circuit Authority.

The district next contends that "all non-IDEA claims brought by parents must be dismissed as neither is an individual with a disability." (*Mot. to Dismiss* [Doc. 9-1] 8:8–9:5.)

As Defendants point out, the Ninth Circuit has already decided this question against the district in a published opinion, Barker v. Riverside Cty. Office of Educ., 584 F.3d 821, 825–28 (9th Cir. 2009). (*Defs.' Opp'n* [Doc. 14] 14:5–15:20.) Both Section 504 and Title II of the ADA allow suits by non-disabled people for retaliation they experience while vindicating the rights of the disabled. The district does not cite to this case in its motion and does not reply to this point. (*Mot. to Dismiss* [Doc. 9-1] 8:8–9:5; *Reply* [Doc. 16].)

### C. The District's Contention that Defendants' Counterclaim Must Cite a Regulation to Maintain a Cause of Action for Denial of a Free Appropriate Public Education under Section 504 is Without Merit.

The district submits that Defendants may not maintain a cause of action for violation of Section 504 through a denial of a free appropriate public education without citing in their pleading to a regulation promulgated under that statute. (*Mot. to Dismiss* [Doc. 9-1] 9:7–10:5.)

In support of this contention, the district cites to Mark H. v. Lemahieu, 513 F.3d 922, 933 (9th Cir. 2008). According to the district, "Counter-Claimants' claim for violation of Section 504 as a denial of [a free appropriate public education] improperly duplicates the claim they have under [the IDEA]," and "the Ninth Circuit has held that to

7

adequately plead a denial of a [free appropriate public education] under Section 504, a claimant must specifically identify which Section 504 regulation is at issue and how it was violated." (*Mot. to Dismiss* [Doc. 9-1] 9:9–16.) The district is in error.

In Mark H, the Ninth Circuit reversed a district court's determination that "the availability of injunctive relief under the IDEA precludes suits for damages under § 504 for government actions that violate both statutes." 513 F.3d at 932. The court identified two reasons for its decision. First, the district court had erroneously assumed that the definition of free appropriate public education under the IDEA and pursuant to 34 C.F.R. § 104.33, promulgated pursuant to Section 504, were the same—and that the IDEA was therefore the plaintiffs' exclusive remedy. Id. at 933. Second, the district court had overlooked congressional intent "that remedies be available under Title V of the Rehabilitation Act for acts that also violate the IDEA," as expressed in 20 U.S.C. § 1415(l):

> ["]Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.["]

Mark H., 513 F.3d at 934 (quoting 20 U.S.C. § 1415 (l)).

As the Ninth Circuit summarized the differences between the IDEA and Section 504:

> The IDEA contains a statutory FAPE provision and allows private causes of action only for prospective relief. Section 504 contains a broadly . . . worded prohibition on discrimination against, exclusion of and denial of benefits for disabled individuals, under which the U.S. DOE has promulgated regulations containing a FAPE requirement worded somewhat differently from the IDEA FAPE requirement. Section 504 can be privately enforced to provide, in addition to prospective relief, compensatory but not punitive damages for past violations.

Mark H., 513 F.3d at 930. When an issue arose in the Mark H. appellate proceedings about whether there existed a private right of action to enforce the

8

Section 504 rights appellants sought to enforce, it was not yet clear what those asserted rights were because "the H. family [had] assumed that alleging a violation of the IDEA [free appropriate public education] requirement [was] sufficient to allege a violation of § 504[.]" See 513 F.3d at 925 ("[The plaintiffs] have not specified precisely whether they believe the U.S. DOE's § 504 [free appropriate public education] regulations, as opposed to the IDEA [free appropriate public education] requirement, were violated, and, if so, in what regard."). The Ninth Circuit remanded the case for further proceedings, stating, "[w]ithout some clarity about precisely which § 504 regulations are at stake and why, we cannot determine whether the H. family has sufficiently alleged a privately enforceable cause of action for damages." Id. It concluded, "the H. family should be given an opportunity to amend its complaint to specify which § 504 regulations they believe were violated and which support a privately enforceable cause of action." Id. at 939.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

From this authority,[1] the district argues that Defendants are impermissibly "duplicat[ing]" their IDEA claim by bringing a claim for violation of Section 504 for failure to provide a free appropriate public education without citing to regulatory authority in their pleading. (*Mot. to Dismiss* [Doc. 9-1] 9:7–10:5.) Ironically, the district urges the Court to make the same mistakes the Ninth Circuit identified in Mark H.—and to overlook 20 U.S.C. § 1415(l). As the Mark H. court noted, "Section 504 contains a broadly . . . worded prohibition on discrimination against, exclusion of and denial of benefits for disabled individuals[.]" 513 F.3d at 930. The district does not argue that Defendants lack a private right of action. (*Mot. to Dismiss* [Doc. 9-1] 9:7–10:5.) It presents no persuasive reasoning as to how Defendants may have failed to allege discrimination. (*Id.*) It does not argue that they have relied on the IDEA to allege a violation of Section 504. (*See id.*) See Mark H., 513 F.3d at 925. No other rationale is evident as to why Defendants'

---

[1] It also cites to J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 2008 WL 850250, at *4 (E.D. Cal. Mar. 28, 2008). (*Defs.' Mot.* [Doc. 9-1] 9:18–20.) This case reads Mark H. as creating a "specificity" pleading requirement as to Section 504 that would require plaintiffs to plead a regulation in order to maintain a Section 504 claim for denial of a free appropriate public education. Id. at *2–*3. This reading is unsupportable. It is inconsistent with Federal Rule of Civil Procedure 8. It is not in line with the broad language of Section 504, or with the broad latitude the Mark H. court afforded that language. See 513 F.3d at 930. And it overlooks the context in which the cited diction from Mark H. arose— through the allegation of a violation of the Section 504 regulations. See id. at 924 ("Among other rulings, the district court held that . . . the . . . [Section 504] *regulations* are not enforceable through a private right of action." (emphasis added)); see also Mark H. v. Lemahieu, 372 F. Supp. 2d 591, 597 (D. Haw. 2005), *rev'd*, 513 F.3d 922 (9th Cir. 2008) ("[T]he Plaintiffs seek to enforce the § 504 regulations which adopt IDEA's requirement of providing a free appropriate public education.").

The one published case that has cited to J.W. is in accord. "[G]iven the test for determining whether a particular regulation is enforceable, it would be illogical to find, as Defendant urges, that Plaintiffs can no longer assert a statutory cause of action." Wiles v. Dep't of Educ., 555 F. Supp. 2d 1143, 1156 n.17 (D. Haw. 2008). "The Ninth Circuit has previously allowed plaintiffs to bring causes of action based on special education-related violations of § 504 without requiring specific reference to the § 504 implementing regulations." Id. at 1156 (citing, *inter alia*, Kling v. Los Angeles Cty., 633 F.2d 876 (9th Cir. 1980); Bird v. Lewis & Clark Coll., 303 F.3d 1015 (9th Cir. 2002); Wong v. Regents of Univ. of California, 192 F.3d 807 (9th Cir. 1999), as amended (Nov. 19, 1999)). "[I]t would be incongruous to require a plaintiff to proceed under a regulation while blocking off the original path under the statute." Id. at 1156 n.17.

Section 504 claim should be dismissed because the pleading does not cite to regulations.

### D. The District's Contention that Defendants' IDEA and Section 504/ADA Claims Cannot Share Factual Allegations Misinterprets Case Law.

The district next seems to contend that Defendants' IDEA and Section 504/ADA claims cannot share a common nexus of fact because the latter two statutes require a showing of discrimination. This is not a correct assessment of the law. See Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). To the extent the district argues that the Counterclaim contains insufficient allegations of discrimination, it does not delve into the facts alleged in the operative pleading at anything more than the most superficial level.

Rather, the district presents Fry v. Napoleon, 137 S. Ct. 743 (2017), for the proposition that it is somehow "particularly suspect" to bring suit under both the IDEA and section 504 or the ADA using the same set of operative facts. (*Mot. to Dismiss* [Doc. 9-1] 13:22.) The district's position seems to be that the same conduct cannot violate the IDEA and constitute discrimination pursuant to Section 504 or the ADA—notwithstanding 20 U.S.C. § 1415(l).[2]

At issue in Fry was administrative exhaustion—as set forth in 20 U.S.C. § 1415(l). The district does not raise exhaustion as an issue here.

---

[2] The IDEA explicitly provides:

> **Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.**

20 U.S.C.A. § 1415(l).

11

The Fry Court stated:

> **A plaintiff's initial choice to pursue [administrative relief pursuant to the IDEA] may suggest that she is indeed seeking relief for denial of a FAPE—with the shift to judicial proceedings *prior to full exhaustion* reflecting only strategic calculations about how to maximize the prospects of such a remedy.**

137 S. Ct. at 757 (emphasis added). In its motion, the district selectively quotes this passage so as to omit the reference to exhaustion and to suggest that the case stands for the proposition that the same facts may not be used to allege violation of the IDEA and also discrimination under section 504 or the ADA:

> **[T]he Court commented that, barring facts to the contrary, it would view the later inclusion of 504 and ADA claims as "strategic calculations about how to maximize the prospects of [the available] remedy."**

(*Mot. to Dismiss* [Doc. 9-1] 13:28–14:3 (bracketed text in original).) The district's motion further states:

> **The Court noted that it is particularly suspect when a student initiates a case with a due process filing under the IDEA and then shifts to seeking a judicial determination under section 504 and [the] ADA . . . . "[P]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a [free appropriate public education under the IDEA]."**

(*Id.* [Doc. 9-1] 13:22–28 (bracketed text in original).) The Fry Court was analyzing under what circumstances a section 504 or ADA suit would trigger the exhaustion requirement of §1415(l)—not whether a suit brought under both the IDEA and anti-discrimination statutes may share a common nexus of fact. See Fry, 137 S. Ct. at 754–58. The district's bald assertion that "there are no allegations of discriminatory conduct" is not supported by citation and does not discuss any of the allegations in the operative pleading. (*Mot. to Dismiss* [Doc. 9-1] 14:4–10.)

//
//
//
//
//

12

17-CV-1386 W (MDD)

### E. Defendants Sufficiently Allege Retaliation.

The district next argues that Defendants do not allege enough facts to state a claim for retaliation under the ADA or Section 504. (*Mot. to Dismiss* [Doc. 9-1] 14:12–17:9.)

The ADA provides:

> **No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.**

42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, one must show that: "(1) he or she engaged in a protected activity; (2) [he or she] suffered an adverse . . . action; and (3) there was a causal link between the two." Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 849 (9th Cir. 2004).[3] Parties do not dispute that the elements of retaliation actions under the ADA and Section 504 are the same, or that these elements apply equally in this context. (*Mot. to Dismiss* [Doc. 9-1] 14:14–22; *Defs.' Opp'n* [Doc. 14] 14:25–15:2.) See Douglas v. California Dep't of Youth Auth., 285 F.3d 1226, 1229 n.3 (9th Cir. 2002) (" '[C]ases interpreting [the ADA and the Rehabilitation Act] are applicable and interchangeable.' ") (quoting Allison v. Dep't of Corrections, 94 F.3d 494, 497 (8th Cir. 1996)).

According to case law that the district cites in its motion, an adverse action is one that is "reasonably likely to deter [individuals] from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1242–43 (9th Cir. 2000).[4] Per that standard, the district provides no cogent rationale as to why revoking funding from evaluations for Mary C.'s

---

[3] The Court omitted the word "employment" from this quotation. Pardi, 389 F.3d at 849. Both parties cite to this case, arguing for its application outside the employment context. As such, for the purposes of this motion the Court assumes without deciding that it applies here.

[4] The bracketed text in this quotation replaces the word "employees" in the original. Ray, 217 F.3d at 1243. In its motion, the district replaced "employees" with "the individual." (*Mot. to Dismiss* [Doc. 9-1] 16:20–21.) Defendants do not offer a different standard as to this point. (*Defs.' Opp'n* [Doc. 14].) Again, for the purpose of this motion the Court assumes without deciding that this standard applies outside the employment context.

13

brother or placing the family home under surveillance might be insufficient to constitute retaliation. As the retaliation claim survives on these theories, the Court does not reach the district's arguments on common law witness immunity. See Fed. R. Civ. P. 12(b)(6); *Claim for Relief*, Black's Law Dictionary (10th ed. 2014).

### F. Defendants Do Not Allege Sufficient Facts as to Ms. Cummins.

The district and Ms. Cummins challenge the § 1983 claim against Ms. Cummins on various grounds. (*Mot. to Dismiss* [Doc. 9-1] 18:23–19:24.)

As a preliminary matter, Defendants clarify in opposition that the only claim they assert against Ms. Cummins is for violation of 42 U.S.C. § 1983, and that this claim is not asserted against the district. (*Defs.' Opp'n* [Doc. 14] 17:24–25, 18:25.) The sum total of the factual allegations in the Counterclaim/Cross-claim against Ms. Cummins as to the § 1983 claim are that she filled out a declaration without signing it, "lied under oath, [misled] the tribunal, and concealed evidence and witnesses[,]" "deprived [Mary C.'s family] of their rights to an impartial due process hearing[,]" "deprived [Mary C.'s family] of their rights to present evidence and confront, cross-examine, and compel the attendance of witnesses[,]" and that she "deprived [Mary C.'s family] of their rights to access Mary C.'s educational records without unnecessary delay . . . before the May and June 2016 IEP team meetings, and before the administrative hearing." (*Counterclaim/Cross-claim* [Doc. 4] ¶¶ 49, 55, 92–94.)

The district and Ms. Cummins construe the § 1983 cause of action against Ms. Cummins as an official capacity claim and attack it on the grounds of Eleventh Amendment immunity and common law witness immunity. They also seek to dismiss its punitive damages prayer. (*Id.* [Doc. 9-1] 17:11–20:20.) The Court does not reach these arguments. Defendants' opposition contains a number of allegations as to Ms. Cummins' conduct that do not appear in the operative pleading. (*Defs.' Opp'n* [Doc. 14] 16:10–28.) The facts that do appear in the Counterclaim/Cross-claim as to Ms. Cummins are too ambiguous for the Court to decide the issues raised. They do not to amount to "a short

14

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[5] The Court may not speculate as to the basis of Defendants' claim for relief. See Twombly, 550 U.S. at 555.

The motion to dismiss the claim against Ms. Cummins for violation of 42 U.S.C. § 1983 will be granted with leave to amend.

### IV. CONCLUSION & ORDER

The motion to dismiss the Counterclaim/Cross-claim is **GRANTED IN PART AND DENIED IN PART**. [Doc. 9.]

Specifically, Defendants' fifth claim for relief, for violation of 42 U.S.C. § 1983 against Ms. Cummins, is dismissed with leave to amend.[6] The motion is otherwise denied.

Defendants may file an amended pleading, if any, by **Friday, February 16, 2018**.

**IT IS SO ORDERED.**

Dated: January 31, 2018

Hon. Thomas J. Whelan
United States District Judge

---

[5] As this claim does not meet the Rule 8 standard and no party raises the issue, the Court does not decide whether Rule 9(b) applies to any of the allegations against Ms. Cummins.

[6] "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

15